# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CORNERSTONE ASSURNCE GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DANIELLE HARRISON, ) <br> ) <br> Defendants. ) | No. 17 CV 4718 <br><br> Hon. Charles R. Norgle |

## OPINION AND ORDER

Plaintiff Cornerstone Assurance Group, Inc. ("Plaintiff") sues Danielle Harrison ("Defendant") for breach of contract in connection with her June 15, 2015 employment agreement and a violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq*. The Complaint alleges that Defendant breached the employment agreement by disclosing confidential information protected by the agreement. The protected information allegedly included trade secrets, such as client lists with detailed information regarding the individuals contained therein, which serves as the basis for Plaintiff's ITSA claim. Before the Court is Defendant's motion to dismiss. For the reasons that follow, the motion is denied.

## I. BACKGROUND

Defendant writes comprehensive group insurance policies. Plaintiff entered her employment agreement with Defendant on June 15, 2015 and served as a sales representative. In that role, Plaintiff provided marketing services, handled enrollment, provided benefits consulting, and sold policies on Defendant's behalf. Plaintiff serviced clients across myriad states. As a sales representative, Defendant had access to confidential information related to client names, addresses, contact information, dates of birth, gender, years of service, income,

private health and medical care information for those who had previously filed claims, and claims history information. Plaintiff alleges that this information constitutes trade secrets.

The employment agreement contains a confidentiality provision which applies to "(i) financial information concerning [Defendant's] business, marketing plans, personnel, contacts, leads, prospects, client lists, fee schedules, forms, information, business management and methods, or trade secrets; (ii) contact names, leads, prospect names, client names, records and/or client histories; and (iii) computer software, management information and information" (collectively, the "Restricted Information"). Compl. ¶ 14, Ex. A ¶ 6.1. Under this agreement, Plaintiff agreed "that she has a continuing duty to [Defendant] which shall survive termination of employment to: (i) maintain the secrecy of the Restricted Information and use such Restricted Information for the exclusive benefit and advantage of [Defendant]; and (ii) retain and keep any Restricted Information which comes into [her] knowledge, possession or control, regardless of whether by proper or improper means, as strictly confidential and shall not disclose such Restricted Information to any third party." Id. ¶ 15, Ex. A ¶ 6.1. In consideration for Defendant's agreement to these provisions, Plaintiff paid Defendant one-thousand dollars. Plaintiff states that it spent years generating and maintaining the Restricted Information and that the information pertains to union workers with whom Plaintiff has "near permanent relationships." Id. ¶ 22. Moreover, Plaintiff narrowly tailors its insurance policies to meet the needs of its clients based on the Restricted Information.

Plaintiff ultimately asserts that before and after terminating Defendant, Defendant disclosed Restricted information to third-parties, including Plaintiff's competitors. Specifically Plaintiff alleges that Defendant disclosed Plaintiff's trade secrets to Defendant's husband and the husband's company, USI Insurance Services, LLC ("USI"). According to the Complaint,

2

Defendant's husband and USI then used that information to wrongfully recruit Plaintiff's clients. For essentially the same reasons and because the Restricted Information allegedly contains trade secrets, Plaintiff asserts that Defendant violated the ITSA.

## II. DISCUSSION

### A. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit, Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Indep. Trust corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (quoting Twombly, 550 U.S. at 556). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." Id. (quoting Twombly, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint and draws all reasonable inferences in his favor. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted).

### B. Plaintiff Has Stated a Plausible Claim for Breach of Contract

To plead a breach of contract claim under Illinois law, "a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." TAS Distrib. Co. v. Cummins Engine Co., 491 F.3d 625, 631 (7th Cir. 2007) (quoting W.W. Vincent & Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 967 (Ill. App. 1st Dist. 2004)).

Here, Defendant assumes, for purposes of this motion only, that Plaintiff has met all but the third element of the claim. Regarding the breach element, Defendant argues that Plaintiff states no more than mere labels and conclusions or formulaic recitations of the element. Defendant asserts that the Complaint fails to state the breach element because the allegations refer too vaguely to unspecified third-parties. Additionally, Defendant takes umbrage with Plaintiff's Complaint naming only one competitor to whom Plaintiff disclosed confidential information and the Complaint's failure to name a specific client in connection with the alleged wrongful disclosure.

The Court rejects Defendant's position. Plaintiff states in detailed manner the type of information it believes Defendant disclosed in breach of the employment agreement. Specifically, the Complaint explains that Defendant was privy to names, addresses, contact information of contacts at all union levels, union member lists and directories, dates of birth, gender, years of service, income, and health and medical information. Plaintiff also sets forth the particular terms of the employment agreement that protected the Restricted Information from disclosure. Even absent the specification of names, Plaintiff has provided more than enough information to put Defendant on notice of the claim against which she must defend. From naming in detail the buckets of information—all of which Defendant had access to throughout the duration of her employment with Plaintiff—Defendant would be on "fair notice of what…the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

Defendant's assertion that Plaintiff's failure to state more than one competitor likewise fails. Disclosing confidential information to only one competitor rather than several competitors still breaches the agreement "not to disclose such Restricted Information to *any third party*." Compl. ¶ 15, Ex. A ¶ 6.1 (emphasis added); see also Airgas USA, LLC v. Adams, No. 15 C

4

50316, 2016 WL 3536788, at *3 (N.D. Ill. June 27, 2016) ("The Agreement clearly prohibits defendant from contacting customers of plaintiff and asking them to buy someone else's product"). Accordingly, it is plausible that after discovery, Plaintiff could show that at least some of the Restricted Information and persons contained within the contact lists were illicitly communicated to a third party.

**C. Plaintiff Has Stated a Claim Pursuant to the ITSA**

The Court turns to Plaintiff's ITSA claim. "To prevail on a claim for misappropriation of a trade secret under the [ITSA], the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003) (internal citations omitted). Under the ITSA, a trade secret is:

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

Id. (quoting 765 ILCS 1065/2(d)) (alteration in original). Both of these "statutory requirements focus fundamentally on the secrecy of the information sought to be protected." Id. (internal citations omitted). The first section does not allow for "trade secret protection for information generally known or understood within an industry even if not to the public at large." Id. at 722 (internal quotation and citation omitted). The second aspect prevents plaintiffs who fail to take affirmative measures against others utilizing their proprietary information from availing themselves of trade secret protection. Id. (internal citation omitted). Despite the express

5

definitions in the ITSA, Illinois courts refer to the following common law factors for guidance: "(1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which the information is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff's business and to its competitors; (5) the amount of time, effort and money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Id. (citing cases). These factors serve only as guideposts, none of the factors is dispositive, and a precise definition of trade secret, applicable to every context, does not exist. Id. (internal citation omitted).

At this stage of the litigation, Plaintiff has set forth sufficient factual allegations such that it could plausibly show that at least some of the information allegedly misappropriated may legally be considered trade secrets. For example, "a list of actual or potential customers may qualify as a trade secret, but such a determination turns on the facts of a case." First Fin. Bank, N.A. v. Bauknecht, 71 F. Supp. 3d 819, 839 (C.D. Ill. 2014) (citing Multiut Corp. v. Draiman, 834 N.E.2d 43, 50 (Ill. App. 1st Dist. 2005)); id. at 841 (distinguishing between simply names, addresses, and phone numbers and "customer lists developed by businesses that serve diffuse customers that have particular needs") (citing Elmer Miller, Inc. v. Landis, 625 N.E.2d 338, 342 (Ill. App. 1st Dist. 1993)). In addition to customer lists, financial information—such as insurance claims histories and records—has also been found to be a trade secret. See First Fin. Bank, 71 F.Supp.3d at 839, 847 ("Plaintiff has produced undisputed evidence sufficient to show that the customer lists and financial information are secret and economically valuable.").

6

Defendant also argues that Plaintiff "fails to appreciate the distinction between personal or private information on the one hand and trade secret information on the other." Def.'s Mot. to Dismiss at 9, ¶ 25. But, "[w]hether customer lists are trade secrets depends on the facts of each case." Liebert Corp. v. Mazur, 827 N.E.2d 909, 922 (Ill. App. 1st Dist. 2005). Although the court in Mazur upheld the trial court's decision that the customer lists were not trade secrets, it did note that the contact list met the first requirement of a trade secret under the ITSA. Id. at 923. Specifically, the plaintiff's "method of building its large customer database by discovering and developing relationships with appropriate buyers…require[d] significant time, effort, and expense…[so the plaintiff] derived economic value from it." Id. The Mazur court also described other cases in which Illinois courts have found customer lists to constitute trade secrets. Id. at 922. In Stampede Tool Warehouse Inc. v. May, the plaintiff sold tools to automotive jobbers and developed its customer list by calling service stations and tool dealers to acquire names. 651 N.E.2d 209, 211 (Ill. App. 1st Dist. 1995). Despite the defendants argument that anyone could get this information from various telephone books and other directories—an argument similar to Defendant's argument that the Restricted Information in this case "could be ascertained from various, including pubic, sources," Def.'s Mot. to Dismiss at 8, ¶ 24; see also id. at 9, ¶ 25—the Stampede Tool court rejected that position, stating that "[t]he customer list is a trade secret [because it was] developed through the laborious method of prospecting, which requires a substantial amount of time, effort, and expense…A list of jobbers is not readily available from anyone public source. Stampede Tool, 651 N.E.2d at 216; see also RKI, Inc. v. Grimes, 177 F. Supp. 2d 859, 874 (N.D. Ill. 2001) (finding names and addresses of potential customers; historical sales information; details of pending sales quotations; sales figures; and shipping, pricing, cost, and profit margin information meet the secrecy criteria under the ITSA).

Here, Plaintiff alleges that it spent years developing the Restricted Information, including union clients' members' claim histories and claims data—data which is not likely to be ascertainable to others from readily available sources—and specifically states that the information at issue is not generally accessible to other persons. Further, Plaintiff alleges that it "uniquely tailored" its insurance policies "to the individual needs of its clients based upon: (a) private member information…and (b) [Plaintiff's] consideration of the members' prior claims history and claims data." Compl. ¶ 24. The Complaint states a plausible claim under the ITSA and therefore withstands Defendant's attack on motion to dismiss.

Defendant's argument that Plaintiff failed to allege that Defendant misappropriated the trade secret also fails. On Defendant's view, the claim fails because Plaintiff only names one competitor and does not "allege when or how [Plaintiff] supposedly disclosed the trade secrets, or which particular trade secrets she even disclosed." However, Plaintiff correctly points out that "the degree of specificity defendant claims is necessary is, in fact, not necessary. The [employment agreement] clearly prohibits defendant from contacting customers of plaintiff and asking them to buy someone else's product…[and Defendant] is not entitled to dismissal because [Plaintiff] did not plead the method of defendant's alleged contacts with these customers, or when they occurred or name them in the complaint." Airgas, 2016 WL 3536788, at *3. The allegations stating the specific items that Defendant allegedly misappropriated and the particular person and company to which Defendant allegedly made the wrongful disclosures do not, as Defendant contends, leave her "only to guess as to what [Plaintiff] claims she actually did to violate the ITSA." Def.'s Mot. to Dismiss at 9, ¶ 26. The Complaint puts Defendant on notice of the alleged violations.

## D. The Marital Communications Privilege Does Not Bar Either of Plaintiff's Claims

The Court next addresses Defendant's argument that the Illinois marital privilege statute bars both the breach of contract and ITSA claims because the claims are premised entirely on privileged marital communications. Illinois privilege law governs in this case. Fed. R. Evid. 501 (In civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

The marital communication privilege issue is best addressed after discovery. First, the allegations state that Defendant "disclosed the Trade Secrets to [Defendant's husband] *and USI* so that [Defendant's husband] *and USI* could use the information for *their* own benefit to solicit [Plaintiff's] clients." Compl. ¶ 57 (emphasis added). Thus, construing the Complaint in favor of Plaintiff as the Court must on motion to dismiss, Plaintiff asserted disclosure beyond conversations with Defendant's husband. It is plausible that Plaintiff shared information with the USI itself through USI employees other than her husband; the marital communication privilege would not cover such communications.

Second, as Plaintiff points out, it makes little sense to enable Defendant to cloak herself from liability at this early stage of the litigation when the Complaint plausibly shows that discovery may reveal that the marital communications were disclosed to third parties, namely, other USI employees. Where a spouse shares a marital communication with third party, he or she waives the marital privilege, and it becomes fair game for the opposing party to reveal the information at issue. See United States v. Hamilton, 701 F.3d 404, 407 (4th Cir. 2012) (where there is a voluntary disclosure of marital communications to third parties, the communication no longer comes within the privilege) (citing Wolfle v. United States, 291 U.S. 7, 14 (1934)). Here, it is plausible that Defendant's husband shared Plaintiff's confidential information with other

9

USI employees in order for USI to utilize the information to its benefit. In that situation, the privilege would not apply.

Likewise, the marital communication privilege would not prohibit a jury from analyzing circumstantial evidence—for example, what USI may have done with Restricted information provided by Defendant's husband after he received the confidential information from Plaintiff—to find that Plaintiff breached the contract and violated the ITSA. See 735 ILCS 5/8-801 (stating that husband and wife may not testify as to any communication or admission made by either of them *to the other*) (emphasis added). The privilege does not cover subsequent uses of the communications outside of the marital union. Once Defendant asserts the privilege with more specificity after discovery—rather than attempting to broadly sweep away all allegations in the Complaint—the Court can determine exactly what evidence the marital communication privilege screens in this case. Otherwise stated, the Complaint establishes a plausibility that information other than the communicated words between Defendant and her husband could establish liability in this case. See Lien v. Wilson & McIlvaine, No. 87 C 6397, 1988 WL 87067, at *1 (N.D. Ill. Aug. 12, 1988) (citing Ryan v. Commissioner of Internal Revenue, 568 F2.d 531, 542 (7th Cir. 1984)) ("The marital communications privilege, like all privileges, must be narrowly construed because it blocks the judicial fact-finding function.") (Title VII case); see also United States v. Darif, 446 F.3d 701, 706 (7th Cir. 2006) (criminal case stating that there is no value in collusion between spouses, "so any confidential statements concerning a joint criminal enterprise are not protected by the privilege").

### E. Defendant's Alternative Request for Entry of a Protective Order

In the event that Defendant's motion is denied, Defendant requests, in the alternative, that the Court enter a protective order "to protect from inquiry or disclosure the communications

10

between [Defendant] and her husband." Def.'s Mot. to Dismiss at 10. The request is denied. Plaintiff is correct that the Court will only entertain a request for a protective order after the parties have had an opportunity to meet and confer pursuant to Local Rule 37.2, which directs the Court to "refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure." Rule 26(c) governs protective orders. Accordingly, the Court will address any motion for a protective order at a later time, should either party elect to file such a motion.

### III. CONCLUSION

In sum, Plaintiff has stated a plausible claim that Defendant breached her employment agreement by disclosing confidential information to a competitor. Plaintiff has also demonstrated that it is plausible that Defendant, in allegedly misappropriating Restricted Information covered by the employment agreement, also wrongfully disclosed trade secrets. Lastly, Defendant's request for a protective order is denied and can be addressed at a later date once an appropriate motion has been filed. In light of the foregoing, Defendant's motion to dismiss is denied.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 5, 2017